IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-245-FL

| | | |
|---|---|---|
| ANGELA E. THRASHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings (DE 24, 30). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. Plaintiff timely filed objections to the M&R, and the deadline for defendant's response has passed. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court rejects the recommendation in the M&R and remands to the defendant for further proceedings.

**BACKGROUND**

Plaintiff filed an application for disability benefits on September 13, 2010, alleging disability beginning September 9, 2010. This application was denied initially and upon reconsideration. A hearing was held on August 14, 2012, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled in a decision dated August 28, 2012. After the appeals council denied

plaintiff's request for review, plaintiff commenced the instant action, seeking reversal of defendant's final decision, or, in the alternative, remand to defendant for further proceedings.

**DISCUSSION**

A.   Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the

2

record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform his past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 9, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: scoliosis status/post spinal fusion; degenerative disc disease; mood disorder; and generalized anxiety disorder. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations.

Prior to proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she can only occasionally perform postural activities; never climb, kneel or crawl; with no ongoing interaction with the general public. In making this assessment, the ALJ found plaintiff's statements about the severity of her symptoms not fully credible to the extent they were inconsistent with the ALJ's RFC assessment. At step four, the ALJ concluded plaintiff was not capable of performing any past relevant work. At step five, the ALJ

3

determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.

B.   Analysis

Plaintiff argues that the ALJ incorrectly analyzed her allegations of debilitating pain and incorrectly analyzed the opinions of her treating and examining physicians. The court agrees. For the reasons that follow, in light of Mascio v. Colvin, ___ F.3d ___, 2015 WL 1219530 (4th Cir. 2015), remand is required for a reassessment of plaintiff's pain allegations. In addition, remand is required for further explanation regarding the weight given to plaintiff's treating and examining physicians.

   1.   Pain Allegations

In assessing credibility of plaintiff's pain allegations, the ALJ must follow a two-step process: (1) the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms, including pain, and (2) the ALJ must evaluate the credibility of the statements regarding those symptoms. Craig v. Chater, 76 F.3d 585, 594-96 (4th Cir. 1996).  The evaluation must account for "all the available evidence, including the claimant's medical history, medical signs, . . .laboratory findings," "daily activities," and "medical treatment." Id. at 595 (internal quotations omitted).  The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

4

Pursuant to Mascio, the ALJ erred in this case by considering the credibility of plaintiff's testimony through the use of the following "boilerplate" method:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. 16); see Mascio, 2015 WL 1219530, at *5. This method, the court observed, "'gets things backwards' by implying that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. (quoting Bjornson v. Astrue, 671 F.3d 640, 644-45 (7th Cir. 2012)). Instead, "the ALJ here should have compared [plaintiff's] alleged functional limitations from pain to the other evidence in the record, not to [plaintiff's] residual functional capacity." Id.

"The ALJ's error would be harmless if he properly analyzed credibility elsewhere." Id. "But here," as in Mascio, "the ALJ did not." Id. at *6. To "properly analyze[] credibility," the court noted, the ALJ must "explain how he decided which of [plaintiff's] statements to believe and which to discredit." Id. Here, the ALJ summarized plaintiff's statements regarding pain as follows:

> [Plaintiff testified] [h]er back issues are getting progressively worse and she cannot stand or sit for long periods of time. she lies down to relieve the pain. She has about 3 good days per week and the rest are bad days. The pain radiates into her right leg and is worse on the right side. The pain is about a 6/10 on a normal day. On a bad day, the pain is 10/10. She can stand for about 20 minutes, sit for 15 minutes and walk for about 10 minutes. She lies down for 30 minutes to 1.5 hours depending on the day. She is taking pain medication but does not have any side effects. Her pain medication does not bring the pain under control.

(Tr. 15). In assessing plaintiff's RFC, the ALJ suggested through his discussion that he chose to credit some, but not all, of her statements. He stated, for example, that "[a]lthough the claimant's back conditions certainly result in mechanical back pain, I have considered these symptoms in

5

limiting her to sedentary work with no climbing, crawling or kneeling and only occasional performance of other postural activites." (Tr. 17).

The ALJ did not, however, explain why he credited plaintiff's statements regarding "mechanical back pain" only to the extent consistent with an already-determined RFC, while not crediting plaintiff's statements that she had pain of 10/10 on "bad days," occurring 2 days per week, with pain radiating into her right leg and worse on the right side. (Tr. 15, 17). Nor did the ALJ explain why plaintiff's pain limited her only in the functional activities of climbing, crawling or kneeling, but had no impact on her functional activities of standing, walking, or sitting. According to plaintiff's testimony, she could only sit for 15 minutes at a time, and her allegation regarding her inability to sit for long periods of time was repeated in contemporaneous records of treating and examining physicians, Drs. Rodger, Pecoraro, and Caughey. (See, e.g., Tr. 313, 497, 519).

In sum, "[t]he ALJ's lack of explanation requires remand." Mascio, 2015 WL 1219530, at *6.

2. Treating and Examining Physicians

When making an RFC assessment, an ALJ "must always consider and address medical source opinions." SSR 96-8p, 1996 WL 374184, at *7. In addition, an ALJ generally must give "greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." Johnson, 434 F.3d at 654 (internal quotations omitted). "[If] a treating source's opinion on the issue(s) of the nature and severity of [the] impairment(s) is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [an ALJ] will give it controlling weight." Craig, 76 F.3d at 590. By contrast, "[i]f a

6

physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id.

The ALJ "must 'give good reasons in [his] notice of determination or decision for the weight [he] give[s][the] treating source's opinion.'" Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). In particular, "the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Plaintiff argues that the ALJ improperly weighed the opinion of plaintiff's treating physicians, Dr. Rodger and Dr. Pecoraro, and the opinion of consultative examiner Dr. Caughey. Dr. Caughey opined in March 2011 that plaintiff had "[e]xtreme kyphoscoliosis postop with debility and inability to be gainfully employed," "apparent degenerative disc disease," and "trouble moderately sitting, standing, moving, lifting, carrying and handling objects." (Tr. 313). Dr. Rodger opined in February 2012 that plaintiff "has progressive deformity and [degenerative disc disease] below her scoliosis fusion," with "[n]o significant evidence of major nerve compression or cord compression at present however symptoms discussed." (Tr. 498). He noted symptoms of lower back pain scaled 10/10, with symptoms over two years getting worse. (Tr. 497). He opined that plaintiff "is disabled at this point," and recommended "medication management and assessment by our physiatrist." (Tr. 498-99). Dr. Pecaro diagnosed plaintiff in August 2012 with "severe thoraco lumbar degenerative disc disease" and determined that she can not work, can only stand or sit 15 minutes at a time, suffers from moderate to severe pain, and is "totally disabled." (Tr. 519).

7

The ALJ accorded each opinion "little weight." (Tr. 18). Two reasons given for discounting the opinions are problematic. First, the ALJ gave little weight to each physician's opinion because, according to the ALJ, each physician recommended "conservative treatment" rather than "intensive treatment." (Tr. 18). Apart from the ALJ's own assessment of the treatment records, however, no treating or examining physician opined that plaintiff had received "conservative treatment" for her conditions, or that such type of treatment was inconsistent with plaintiff's disability at the time. Rather, in seeking to "stabilize[]" plaintiff's pain before considering "interventional therapies," Dr. Pecoraro suggested an ongoing, developing, course of treatment. (Tr. 496). Dr. Rodger's recommendation of "medication management," while reserving "future surgery," also suggests an ongoing course of treatment. (Tr. 499). No other physician opinions, including non-examining consultative opinions, included a relative assessment of treatment options. (See, e.g., Tr. 81-83, 95-97).

Second, the ALJ gave little weight to the opinion of Dr. Pecoraro because plaintiff "reported that her pain was only present 50% of the time," and the ALJ gave little weight to the opinion of Dr. Caughey because there was no documentation of "any significant complaint of sitting for prolonged periods of time." (Tr. 18). In light of the above-discussed error in assessing plaintiff's credibility, however, a reexamination by the ALJ of plaintiff's reported symptoms is warranted. Considered according to the correct methodology set forth by the Fourth Circuit in Mascio, plaintiff's subjective complaints appear to support, rather than detract from, the opinions of Dr. Pecoraro and Dr. Caughey. Dr. Pecoraro noted, for example that plaintiff's chief complaint was "arching pain with a numbing, shooting, pins and needles type pain," "present 50% of the time," translating to an average pain intensity of 9-10/10 over a 7-day period, with exacerbating factors "[i]ncluding sitting

8

and standing." (Tr. 495). Such reported symptoms are consistent with Dr. Pecoraro's opinion that plaintiff suffered from moderate to severe pain, could not work, and could stand and sit only 15 minutes at a time. (Tr. 519). They are also consistent with Dr. Caughey's assessment that plaintiff "has trouble moderately sitting, standing, moving, lifting, carrying, and handling objects." (Tr. 313).

In sum, remand is required for further consideration of plaintiff's subjective complaints of pain and the treating and examining physician opinions in the record. Because remand is required for purposes of reassessing plaintiff's RFC, the court does not reach plaintiff's additional argument concerning the hypothetical question posed to the vocational expert. Furthermore, because it is the province of the ALJ in the first instance to weigh the evidence, the court rejects plaintiff's suggestion to reverse and order payment of benefits without remand. Instead, the court will grant plaintiff's alternative request to remand for further proceedings.

## CONCLUSION

Based on the foregoing, the court REJECTS the recommendation in the M&R, GRANTS plaintiff's motion (DE 24), DENIES defendant's motion (DE 30), and REMANDS to the defendant for further proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. 405(g).

SO ORDERED, this the 27th day of March, 2015.

                                        LOUISE W. FLANAGAN
                                        United States District Judge